# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# BRYSON CITY DIVISION
# 2:13cv47

| | |
|---|---|
| PEGGY HILL and AMY WALKER, )<br>)<br>    Plaintiffs, )<br>)<br>v. )<br>)<br>BARRY COGGINS, et al., )<br>)<br>    Defendants. )<br>_____ | **MEMORANDUM AND RECOMMENDATION** |

Pending before the Court is Defendants' Motion to Dismiss [# 8]. Plaintiff brought this action against Defendants asserting three claims pursuant to the Endangered Species Act ("ESA"). Defendants move to dismiss the Complaint for lack of standing pursuant to Rule 12(b)(1) and for failure to state a claim pursuant to Rule 12(b)(6). Upon a review of the record, the parties' briefs, and the relevant legal authority, the Court **RECOMMENDS** that the District Court **DENY** the Motion to Dismiss [# 8].

## I.  Background

Plaintiffs are enrolled members and tribal elders of the Eastern Band of Cherokee Indians ("Cherokee Indians"). (Pls.' Compl. ¶ 6.) Plaintiffs' reside in Cherokee, North Carolina. (Id.) As Cherokee Indians, Plaintiffs have a deep

spiritual and cultural connection with wildlife, and wildlife holds a special place in the culture of Cherokee Indians. (Id. ¶ 7.) Plaintiffs have a particular cultural and spiritual connection with bears, including grizzly bears. (Id. ¶¶ 7-9.) In addition, Plaintiffs have an aesthetic interest in seeing grizzly bears living under humane conditions while in captivity. (Id. ¶ 11.)

In 2013, Plaintiffs visited the Cherokee Bear Zoo (the "Zoo") in Cherokee, North Carolina. (Id. ¶ 1, 12.) The Zoo is an unaccredited roadside menagerie that confines and exhibits wildlife, including four adult grizzly bears. (Id. ¶¶ 25, 28.) Visitors to the Zoo pay a fee to view, feed, and take pictures with the wildlife. (Id. ¶ 25) Defendants Barry and Collette Coggins are residents of Swain County, North Carolina and the owners and operators of the Zoo. (Id. ¶ 15.)

While visiting the Zoo, Plaintiffs developed a strong personal and emotional attachment to the grizzly bears at the Zoo. (Id. ¶ 12.) Plaintiffs, however, were aesthetically and emotionally injured while visiting the Zoo when they observed the grizzly bears living in inhumane conditions that are unfit for grizzly bears. (Id.) For example, the grizzly bears are held in barren concrete pits that lack shelter or anything that resembles the bears' natural habitat. (Id. ¶¶ 12, 33.) The concrete pits range in size from 300 to 1,300 square feet. (Id. ¶ 33.) These concrete pits lack the essential environmental enrichment for the bears because

they contain no structural enhancements, natural furnishings, or other forms of enrichment that would allow the bears to engage in their normal behaviors. (Id. ¶ 34.) The concrete pits also lack the appropriate shelter to protect the bears from sunlight and inclement weather, which prevents the bears from escaping extreme temperatures and weather conditions. (Id. ¶ 36.)

The Zoo also periodically has grizzly bear cubs in its possession. (Id. ¶ 29.) The cubs are either born at the Zoo, rented, or commercially acquired. (Id.) The cubs are kept in the concrete pits or in bird cages. (Id.) The Zoo primarily uses the cubs for photo shoots with its patrons, but once the cubs become too large for photo shoots, the cubs are commercially sold or transported to other locations. (Id. ¶¶ 29-30.)

During Plaintiffs' visit to the Zoo, the bears were lethargic and despondent and were begging the Zoo patrons for food. (Id.) Plaintiffs allege that the Zoo fails to provide an adequate diet to the bears and encourages patrons to purchase food such as apples, bread, lettuce, and dog food and toss it into the pits. (Id. ¶ 35.)

As a result of being kept in these pits, the bears are unable to engage in their typical behavior, which results in poor health, behavior stress, and diminished psychological well-being. (Id. ¶ 37.) For example, the bears engage in constant

pacing on the abrasive cement floor, which injures their footpad and claws. (Id. ¶¶ 38-9.) The bears also engage in head-weaving, which resulted in at least one bear having a wound on its head associated from excessive head rubbing on the walls and floors of the pit. (Id. ¶ 40.)

The bears at the Zoo also suffer from dental decay, loss of muscle, and incomplete molts of their coat. (Id. ¶ 41.) Finally, because the bears are not allowed to hibernate in the winter, they suffer from sleep deprivation and other biological enrichment problems. (Id. ¶ 41.)

As a result of witnessing the conditions in which the bears at the Zoo live, as well as the condition of the bears themselves, Plaintiffs are currently suffering and will continue to suffer aesthetic and emotional injury. (Id. ¶ 13.) Plaintiffs would like to visit the bears again in the future but are unable to do so while they are housed at the Zoo without suffering additional aesthetic and emotional injury. (Id. ¶ 14.) If, however, the bears were moved to a more humane and natural setting where the bears were allowed to live in an appropriate environment and were humanely treated, then Plaintiffs would visit the bears again. (Id. ¶ 14.)

Plaintiffs now bring this action against Defendants asserting three claims. Count One asserts a claim for the unlawful take of grizzly bears pursuant to the ESA. (Id. ¶¶ 43-4.) Count Two asserts a claim for unlawful possession of grizzly

bears under the ESA. (Id. ¶¶ 45-6.) Count Three asserts a claim for the unlawful acquisition and/or disposing of grizzly bear cubs under the ESA. (Id. ¶¶ 47-8.)

**II.     Legal Standard**

The central issue for resolving a Rule 12(b)(6) motion is whether the claims state a plausible claim for relief. See Francis v. Giacomelli, 588 F.3d 186, 189 (4th Cir. 2009). In considering Defendants' motion, the Court accepts the allegations in the Complaint as true and construes them in the light most favorable to Plaintiffs. Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 253 (4th Cir. 2009); Giacomelli, 588 F.3d at 190-92. Although the Court accepts well-pled facts as true, it is not required to accept "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement . . . ." Consumeraffairs.com, 591 F.3d at 255; see also Giacomelli, 588 F.3d at 189.

The claims need not contain "detailed factual allegations," but must contain sufficient factual allegations to suggest the required elements of a cause of action. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65 (2007); see also Consumeraffairs.com, 591 F.3d at 256. "[A] formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555, 127 S. Ct. at 1965. Nor will mere labels and legal conclusions suffice. Id. Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the

defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009).

The Complaint is required to contain "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570, 127 S. Ct. at 1974; see also Consumeraffairs.com, 591 F.3d at 255. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949; see also Consumeraffairs.com, 591 F.3d at 255. The mere possibility that a defendant acted unlawfully is not sufficient for a claim to survive a motion to dismiss. Consumeraffairs.com, 591 F.3d at 256; Giacomelli, 588 F.3d at 193. Ultimately, the well-pled factual allegations must move a plaintiff's claim from possible to plausible. Twombly, 550 U.S. at 570, 127 S. Ct. at 1974; Consumeraffairs.com, 591 F.3d at 256.

**III. Analysis**

**A. Plaintiffs have Standing to Bring this Action**

The United States Constitution limits federal courts to adjudicating cases and controversies. U.S. Const. art. III, § 2. One doctrine that has grown out of this constitutional requirement is standing. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S. Ct. 2130, 2136 (1992); Friends For Ferrell Parkway, LLC v.

Stasko, 282 F.3d 315, 319 (4th Cir. 2002). "The basic purpose of [the] standing doctrine is to ensure the plaintiff has a sufficient personal stake in the outcome of a dispute to render judicial resolution of it appropriate . . . ." Stasko, 282 F.3d at 319; Friends of the Earth Inc. v. Gaston Copper Recycling Corp., 629 F.3d 387, 396 (4th Cir. 2011). In order to satisfy Article III's standing requirement, a plaintiff must allege facts demonstrating that: (1) plaintiff suffered an injury in fact; (2) that the injury suffered is fairly traceable to the challenged actions of the defendant; and (3) that it is likely, rather than just speculative, that the Plaintiff's alleged injury will be redressed by a favorable decision by the Court. Friends of the Earth Inc. v. Laidlaw Envtl. Servs., 528 U.S. 167, 180-81, 120 S. Ct. 693, 704 (2000); Stasko, 282 F.3d at 320; South Carolina Wildlife Fed'n v. Limehouse, 549 F.3d 324, 329 (4th Cir. 2008).

Defendant challenges only the first prong of the standing requirement – injury in fact. For purposes of Article III standing, injury means injury to the Plaintiff, not injury to the environment or injury to the bears at issue in this dispute. See Laidlaw, 528 U.S. at 181, 120 S. Ct. at 704; Friends of the Earth, Inc. v. Gaston Copper Recycling Corp., 204 F.3d 149, 156 (4th Cir. 2000). "The injury in fact prong requires that a plaintiff suffer an invasion of a legally protected interest which is concrete and particularized, as well as actual or imminent." Gaston

Copper, 204 F.3d at 154; Stasko, 282 F.3d at 320. The injury cannot be conjectural or hypothetical. Lujan, 504 U.S. at 560, 112 S. Ct. at 2136; Stasko, 282 F.3d at 320. An individual's aesthetic or recreational interests may constitute an injury sufficient to satisfy the injury in fact standing requirement. Laidlaw, 528 U.S. 183, 120 S. Ct. at 705; Gaston Copper, 204 F.3d at 154. Moreover, "the desire to use or observe an animal species, even for purely esthetic purposes, is undeniably a cognizable interest for purpose of standing." Lujan, 504 U.S. at 562-63, 112 S. Ct. at 2137.

Here, Plaintiffs sufficiently allege a cognizable injury to themselves to demonstrate an injury in fact. Plaintiffs allege that they previously visited the grizzly bears at the Zoo and suffered aesthetic and emotional harm from observing the bears living in inhumane conditions. Plaintiffs have a spiritual and cultural connection with bears and developed a strong personal and emotional attachment to the bears at the Zoo. Plaintiffs personally have an aesthetic interest in seeing the bears living in humane conditions. Such factual allegations are sufficient to allege an injury for purposes of Article III standing. See e.g. American Soc'y for the Prevention of Cruelty to Animals v. Ringling Bros. & Barnum & Baily Circus, 317 F.3d 334 (D.C. Cir. 2003) (individual had standing where he alleged he would suffer aesthetic injury from personally seeing mistreatment of elephants).

Finally, Plaintiffs allege that they want to visit the bears again but are unable to do so while the bears are kept at the Zoo in their current condition because of the additional injury Plaintiffs would suffer from witnessing the bears in these conditions. Such conditional statements that Plaintiffs would return to visit the bears but for the complained of conditions is sufficient to satisfy the pleading requirements for Article III standing. Compare Lindlaw, 528 U.S. at 184, 120 S. Ct. at 705-6 (holding that plaintiffs had standing to pursue claims where they offered conditional statements that they would use the nearby river if not for the discharge of pollutants into the river), with Lujan, 504 U.S. at 564, 112 S. Ct. 2138 (holding that speculative statements that plaintiffs intended to "some day" return to an area on the other side of the world to view endangered species was insufficient to demonstrate an injury in fact). Plaintiffs live near the Zoo; they could return to visit the Zoo at any time but decline to do so because of the alleged living conditions and physical condition of the bears and the additional harm that seeing the bears in this condition will cause Plaintiffs. Such factual allegations are sufficient to demonstrate an injury in fact to Plaintiffs at this this stage of the proceedings. Accordingly, the Court **RECOMMENDS** that the District Court **DENY** the Motion to Dismiss for lack of standing.

## B. The Complaint States a Claim for a Taking under the ESA

The ESA contains a specific provision for suits brought by concerned citizens. 16 U.S.C. § 1540(g). Specifically, Section 1540 provides that any person may commence a suit on his or her own behalf "to enjoin any person . . . who is alleged to be in violation of any provision of this chapter or regulation issued under the authority thereof . . . ." 16 U.S.C. § 1540(g)(1)(A). The ESA makes it unlawful for a person to "take" endangered or threatened species. 16 U.S.C. § 1538(a)(1)(B); 50 C.F.R. § 17.31(1); Babbitt v. Sweet Home Chapter of Cmtys. for a Great Oregon, 515 U.S. 687, 690, 115 S. Ct. 2407, 2409 (1995); Ctr. For Biological Diversity v. U.S. Bureau of Land Mgmt., 698 F.3d 1101, 1106 (9th Cir. 2012); Animal Welfare Inst. v. Martin, 623 F.3d 19, 21 (1st Cir. 2010). Moreover, the regulations specifically prohibit the taking of grizzly bears in the lower forty-eight states. 50 C.F.R. § 17.40(b)(1)(i)(A). The term "take" means to "harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or attempt to engage in any such conduct." 16 U.S.C. § 1532(19). The regulations define "harass" to mean:

> Harass in the definition of "take" in the Act means an intentional or negligent act or omission which creates the likelihood of injury to wildlife by annoying it to such an extent as to significantly disrupt normal behavioral patterns which include, but are not limited to, breeding, feeding, or sheltering. This definition, when applied to captive wildlife, does not include generally accepted:

(1) Animal husbandry practices that meet or exceed the minimum standards for facilities and care under the Animal Welfare Act,

(2) Breeding procedures, or

(3) Provisions of veterinary care for confining, tranquilizing, or anesthetizing, when such practices, procedures, or provisions are not likely to result in injury to the wildlife.

50 C.F.R. § 17.3. Finally, the regulations define "harm" to mean:

an act which actually kills or injures wildlife. Such act may include significant habitat modification or degradation where it actually kills or injures wildlife by significantly impairing essential behavioral patterns, including breeding, feeding or sheltering.

Id.

Defendants contend that Plaintiffs fail to allege conduct that constitutes a take within the meaning of the ESA. The Complaint, however, plainly and clearly alleges facts supporting such a claim. The Complaint alleges that Defendants mistreat the bears by confining the bears to conditions that result in harm to the bears, including wounds to the head and footpad. (see e.g. Pls.' Compl. ¶¶ 37-41.) Any such harm could constitute a take within the meaning of the ESA. See 16 U.S.C. § 1532(19). Moreover, the Court cannot say as a matter of law at this stage of the proceedings based on the allegations in the Complaint whether the alleged harassment of the bears would fall under the exclusion for the minimal standards

for facilities and care under the Animal Welfare Act. The Court cannot resolve factual questions such as this at the Rule 12(b)(6) stage.[1] The Court **RECOMMENDS** that the District Court **DENY** the Motion to Dismiss for failure to state a claim.

### C. The Complaint Properly Alleges that the Bears at the Zoo are Grizzly Bears Subject to the ESA

Defendants contend that the Complaint fails to state a claim for relief because the bears at issue are not grizzly bears. In support of their argument, Defendants attached the affidavit of the Zoo's veterinarian. As a threshold matter, the Court excludes the affidavit of the veterinarian because it would be improper for this Court to consider it at the Rule 12(b)(6) stage. Moreover, the Complaint repeatedly alleges that the bears at issue are grizzly bears. Whether or not the bears are, in fact, grizzly bears and subject to the Endangered Species Act and the applicable regulations is a factual question that can be resolved either at the summary judgment stage or by the trier of fact. Such factual questions are not for this Court to resolve on a Rule 12(b)(6) motion to dismiss for failure to state a claim. The Court **RECOMENDS** that the District Court **DENY** the Motion to Dismiss for failure to state a claim.

---

[1] Defendants' submission of evidence supporting its Rule 12(b)(6) motion is improper and the USDA inspections reports will not be considered by the Court.

### D. The Complaint does not Assert a Claim for Enforcement of a Permit

Defendants contend that the Complaint is subject to dismissal pursuant to Rule 12(b)(6) because Plaintiffs are actually asserting a claim to enforce permits that are subject to the exclusive authority of the Secretary of Agriculture. Although some courts have held that an individual may not bring a citizen suit under the ESA based on permit violations, see e.g. <u>South Yuba River Citizens Leauge v. Nat'l Marine Fisheries Serv.</u>, 629 F. Supp. 2d 1123, 1129-30 (E.D. Cal. 2009), Plaintiffs do not assert any such claims. Despite Defendants' best efforts to re-characterize the allegations in the Complaint, a review of the Complaint demonstrates that Plaintiffs are asserting claims pursuant to the ESA for the unlawful take of grizzly bears based on the alleged harm and/or harassment of the bears. Plaintiffs allege specific violations of the ESA and the pertinent regulations, as opposed to violations of the terms of any permits issued to Defendants. Such claims by Plaintiffs are proper under the ESA. See 16 U.S.C. § 1538(a)(1)(B). Accordingly, the Court **RECOMMENDS** that the District Court **DENY** the Motion to Dismiss.

## IV. Conclusion

The Court **RECOMMENDS** that the District Court **DENY** the Motion to Dismiss [# 8].

Signed: May 27, 2014

Dennis L. Howell
United States Magistrate Judge

## **Time for Objections**

The parties are hereby advised that, pursuant to 28, United States Code, Section 636(b)(1)(C), and Rule 72, Federal Rules of Civil Procedure, written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen** (**14**) days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986); United States v. Schronce, 727 F.2d 91 (4th Cir.), cert. denied, 467 U.S. 1208 (1984).